FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

00 MAY -3  AM 9: □

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| FRANCES LATHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 99-JEO-0204-M |
| | ) | |
| RIVERVIEW REGIONAL MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

MAY 3  2000

## MEMORANDUM OPINION

In this action, the plaintiff, Frances Latham ("Latham" or "the plaintiff"), a former employee of the defendant, Riverview Regional Medical Center ("the defendant" or "the hospital"), asserts that she was the victim of age discrimination by the defendant, in violation of the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 621, *et seq.* The defendant has filed a motion for summary judgment. (Doc. 6).[1] The plaintiff has filed a motion to strike certain exhibits submitted in support of that motion. (Doc. 9). The court conducted a hearing on the motions on March 22, 2000. Upon due consideration, both motions are hereby granted in part and denied in part.[2]

## I. FACTUAL BACKGROUND[3]

The plaintiff was hired as a staff x-ray technician by the defendant hospital's previous

---

[1] References herein to "Doc. ___" are to the docket number assigned a particular pleading by the Clerk of the Court and which are located in the lower right-hand corner.

[2] The plaintiff originally also had a claim for sex discrimination. That claim was conceded in her response to the defendant's motion for summary judgment. (Doc. 10, p. 26).

[3] As this matter is before the court on the defendant's motion for summary judgment, all evidence and inferences are considered in a light most favorable to the plaintiff.

owner in 1967. (Latham depo., pp. 15-16).[4] She was ultimately promoted to supervisor of the nuclear medicine department, overseeing the work of one to three other employees. (Latham depo., pp. 37-43). Until April 1997, she was supervised by Charles Gardner, the manager of the radiology department. (*Id.*, pp. 44-46). Other than two employee incident reports, her performance evaluations were favorable. At the times pertinent to this action, she was sixty-three years old.

Lyn Wilkinson[5] was hired in April 1997 as the manager of the radiology department, replacing Gardner. (Wilkinson depo., pp. 92-95).[6] As the supervisor of the nuclear medicine department, the plaintiff did not have the authority to hire, fire, demote, promote, or discipline without consulting the manager of radiology. (Latham depo., pp. 66-67). She supervised two individuals that are pertinent to this matter: Jeff Dover, a thirty-five year old male, and Amy Boatfield, a twenty-seven year old female. After Wilkinson became the radiology manager, the plaintiff noted work related problems with Dover and Boatfield. Specifically, she found that Dover would be away from the department beyond the thirty minutes allowed for lunch and at other times when he could not be located. (Latham depo., pp. 101-107). She also stated that Boatfield would be late in arriving for work in the mornings and would not remain at the hospital throughout her shift. The plaintiff discussed these matters with Wilkinson who responded by "shrugg[ing] his head, like you know, you can do what you want to." (Latham depo., p. 129).

---

[4] Latham's deposition is exhibit 8 to document 11.

[5] Mr. Wilkinson's name is spelled differently in the various documents submitted in this matter. His deposition lists his correct name as Joseph Lyn Wilkinson.

[6] Wilkinson's deposition is defendant's exhibit 3 from the March 22, 2000 hearing.

2

She interpreted this as meaning "You'll cut your nose off to spite your face if you do it." (*Id.*).

Nothing was ever said or done to Dover or Boatfield after plaintiff's conversation with Wilkinson

concerning these matters. (*Id.*).[7]

### A. July 1, 1997 Incident

About the first of July 1997, Dover was upset with the plaintiff concerning scheduling

changes she had made. (Latham depo., p. 109). He voiced his concerns to the plaintiff and then

went to Wilkinson's office. (*Id.*, pp. 109-10). She followed him. (*Id.*, p. 110). Although the

record is not clear, they appeared to have discussed the matter with Wilkinson and Dover returned

to his work area. The plaintiff and Wilkinson then discussed the situation outside the presence of

Dover. Wilkinson asked the plaintiff if the schedule was fair. When she said it was, he told her to

go back and explain it to Dover. When she went to Dover's work area, she "walked up and . . .

touched him lightly on his right shoulder" and told him she needed to talk with him. (*Id.*, p. 110).

He "jumped up," "yelled" that he did not "have to put up with this" and her "hitting" him, and he

headed down the hall. (*Id.*). Wilkinson heard the commotion and went into the hall. (Wilkinson

depo., p. 71). He saw Dover and heard him say, "You're not going to hit me again and you're not

going to curse me anymore." (*Id.*, p. 72). Because Wilkinson could observe that Dover was

angry, he removed him from the room. Wilkinson talked with him about what had happened, and

Dover told him that the plaintiff had "struck him and cursed him." (*Id.*). Dover also stated that

she said, "God damn it. See, if you had of (sic) kept your mouth shut this wouldn't happen." (*Id.*).

---

[7] The plaintiff also stated there was one instance when she needed help in the lab, but she was unable to locate Dover, Boatfield, or the other lab technician. She went to Wilkinson who told her to beep the individuals. When she told him that she tried that, he offered no further assistance and no action was ever taken against the other employees. (Latham depo., pp. 130-34). All three employees were younger than the plaintiff.

3

The plaintiff denied hitting Dover. (*Id.*, pp. 74-75). Wilkinson suspended the plaintiff for one day, and Dover was written up for insubordination but allowed to go right back to work. (Latham depo., p. 120). The plaintiff returned to work on July 3, 1997.

Dover wrote and signed an incident report on July 1, 1997, concerning the incident. Dover stated that the plaintiff hit him on the shoulder while he was sitting in his chair. (Wilkinson depo., plaintiff's exhibit 2). The plaintiff also wrote a statement concerning the matter, and it was signed and dated July 1, 1997. (*Id.*, plaintiff's exhibit 3). She states, in part, that she put her hand on Dover's shoulder, but denied hitting him. (*Id.*, p. 1).

### B. September 26, 1997 Incident

On September 26, 1997, at around 10:00 a.m., Wilkinson entered the area of the stress lab where the plaintiff was using the telephone. (Latham depo., pp. 140-41). He walked into the room and told the plaintiff to come with him to his office. (*Id.*, p. 141). He then informed her that he was dismissing her "for sleeping on the job." (*Id.*). The plaintiff vehemently denied that she was asleep. (*Id.*, pp. 144, 147). According to Wilkinson, he observed her sleeping in the nuclear medicine lab. Specifically, he "observed Mrs. Latham sitting in a chair with her arms folded, her head hanging down and her mouth hanging open." (Wilkinson depo., p. 97). He "walked over to the chair, waved [his] hand in front of her face . . . . and [t]hen . . . went to human resources and told Randy Harrison[, the Director of Human Resources,] that we had an employee asleep on the job. . . ."[8] (*Id.*, p. 97). Harrison told him to do the paperwork on the incident. (*Id.*,

---

[8] Boatfield also observed the plaintiff sleeping. (Boatfield depo., pp. 70-73). She stated that the plaintiff was snoring. (*Id.*, p. 73). She also believes that Wilkinson heard her talking about the incident and proceeded to the lab to observe the plaintiff. (*Id.*, pp. 71-72). At some point after Wilkinson went to the lab, he asked Boatfield to write down what she saw. (*Id.*, p. 72, plaintiff's exhibit 1). (Boatfield's deposition is exhibit 1 from the March 22, 2000 hearing).

pp. 97-98).

On September 30, 1997, the plaintiff went to see David McClellan, the Hospital Administrator. She told him that she had been sent home and had not been contacted about what was going to happen. (Latham depo., p. 153). McCellan told her someone would contact her that afternoon. (*Id.*). She was called later and told to return to work the next day. (*Id.*, p. 154). She returned to work on Wednesday, October 1, 1997. (*Id.*, pp. 155-56).

The following day, October 2, 1997, she was called into Wilkinson's office and informed that she was going to be demoted and her supervisory pay reduced. (*Id.*, p. 156). A "Corrective Action/Discipline Record" was completed. On it, Wilkinson listed the incident that was the basis of the corrective action as his observation of the plaintiff asleep in the "ADAC process area in the Nuclear Lab." (Wilkinson depo., plaintiff's exhibit 5, p. 1). The plaintiff stated on the form that she was not sleeping. (*Id.*). Wilkinson then wrote, "Ms. Latham is in denial of sleeping on the job. If we experience another disciplinary event from Ms. Latham, she will be terminated." (*Id.*). The plaintiff signed and dated the form just under the section which provides, "I understand that I have the right to appeal through formal problem solving procedures. My signature indicates I have received a copy of this form." (*Id.*).

She then wrote a letter dated October 7, 1997, to McClellan, asserting that the disciplinary action was "unjust and provided in an effort to cause [her] retirement or termination due to her age, sixty-three." (Latham depo., p. 160). She believed that Wilkinson wanted to place Dover in her position because they were friends and because Dover was a male. (*Id.*, pp. 161-62). Wilkinson was not aware until after the plaintiff was terminated that she was making any type of discrimination claim. (Wilkinson depo., pp. 139-40).

5

Richard Kolleda, the Chief Operating Officer of the defendant, issued a memorandum on October 8, 1997, stating that Dover was assuming the "Nuclear Medicine supervisory position" effective immediately. (Doc. 11, Ex. 7). The decision to replace the plaintiff with Dover was made by Wilkinson. (Wilkinson depo., p. 105). Dover was thirty-five years old at the time he replaced the plaintiff.

### C. January 26, 1998 Incident

The plaintiff was "on call" on January 26, 1998, to conduct any necessary procedures after the usual business hours. She was called back to the hospital to perform a lung scan on a heart patient, Diane Ballard. (Latham depo., pp. 176-77; Ballard depo., p. 11).[9] The plaintiff proceeded to the patient's room. After Ballard was placed in a wheelchair and the plaintiff started out of the room with her, she (Ballard) asked what would happen if her heart did that "funny thing." (*Id.*, p. 180). According to the plaintiff, she told the patient that she would check with a nurse because she may need to be monitored. Again, according to the plaintiff, a nurse then attached a monitor and they proceeded to the lab to perform the test. (Latham depo., pp. 180-81). After the test, the patient told the plaintiff that she did not like her attitude. (*Id.*, p. 182). The plaintiff stated during her deposition that she did nothing to prompt such a comment. (*Id.*). She did, however, apologize to Ballard. (*Id.*, pp. 188-89). When Ballard returned to her room, she asked for a complaint form because she was unhappy with the treatment that she received from the plaintiff. (Ballard depo., p. 22).

As a consequence of this incident, a "Variance Report" was completed by a nurse and

---

[9] Diane Ballard's deposition is defendant's exhibit 4 from the March 22, 2000 hearing.

witnessed by Ballard.  It provides:

> Frances Latham came to CCU to get Mrs. Ballard for a VQ Scan which Dr. Ann Campbell had written to be stat.  When she entered the room she was hostile to me & patient.
>
> Mrs. Latham asked in a very hateful voice, "what time the procedure had been ordered" she stated in front of the patient "well I had to come all of the way from home and I had just gotten there from this place.  I'm just sick of this!"  She was rushing the patient out of the bed and left out of the unit before I could even get her connected to the portable monitor and accompany the patient to x-ray.  I did catch up with her quickly and connected the patient to the monitor.
>
> When we arrived she was very short to the patient and me and was noticeably irritated that she had to come in to do this procedure.  Her behavior was very unprofessional and embarrassing for the patient.  The patient told her she did not appreciate her attitude and that she shouldn't be in this field if she didn't want to do her job.  The patient was very upset by her behavior and attitude toward myself and the patient, she was very abrupt & also disconnected the patient from the heart monitor [without] even asking me and I had to go and get new leads to put her back on the monitor.  The patient had been having SVT.

(Wilkinson depo., plaintiff's exhibit 9, pp. 1-2).  The nursing supervisor also wrote on an attachment to the form that after the patient "return[ed] from Nuclear Med, she was visibly upset & began to have runs of SVT again."  (*Id.*, p. 2).  The attachment to the report bears the date January 28, 1998.

Mary Elliott, the Director of Nursing, informed Wilkinson of the incident by asking him on January 28, 1998, if he had seen the incident report.  (Wilkinson depo., pp. 126-27). Wilkinson met with Randy Harrison concerning the incident, and a decision was made to terminate the plaintiff.  (*Id.*, pp. 130-31).  Wilkinson met with the plaintiff on the same day.  She denied the allegations.  (*Id.*, p. 128).  She stated that "the patient got kind of short with me at the end of the test."  (Latham depo., p. 194).  She was terminated at that point by Wilkinson.  (*Id.*, pp. 193-94).  Her duties were assumed by Sherry Kinsman, a forty-two year old female.

7

(Wilkinson depo., p. 140).

## II. MOTION TO STRIKE

The plaintiff objects to certain exhibits offered by the defendant in support of its motion for summary judgment. The plaintiff asserts that the documents are inadmissible hearsay or not in proper form. The Eleventh Circuit Court of Appeals has recently stated:

> The general rule is that inadmissible hearsay "cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (citing cases from six Circuits). Rule 56(e) of the *Federal Rules of Civil Procedure* requires that "affidavits" that support or oppose summary judgment motions "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." This rule also applies to testimony given on deposition. *See Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 570 n.4 (7th Cir. 1989).

> Some courts, including our own, appear to have restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." *See Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1246 (3rd Cir. 1993); *Raby v. Baptist Med. Ctr.*, 21 F. Supp. 2d 1341, 1353-54 n.9 (M.D. Ala. 1998); *Coker v. Tampa Port Auth.*, 962 F. Supp. 1462, 1466-67 (M.D. Fla. 1997). These courts have coined these phrases from language appearing in the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), which held that a nonmoving party, in opposing a motion for summary judgment, need not produce affidavits, but may refer the district court to "pleadings, depositions, answers to interrogatories, and admissions on file," as provided by *Fed. R. Civ. P.* 56(c). We believe that the courts have used the phrases "reduced to admissible evidence at trial" and "reduced to admissible form" to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose. For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).

*Macuba v. Deboer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999)(footnotes omitted). Inadmissible

hearsay thus cannot defeat a motion for summary judgment where there is no indication that it is reducible to a form that would be admissible at trial. *Pritchard*, 92 F.3d at 1135.

The first item that the plaintiff objects to is a letter from the defendant to the plaintiff. It is a one page document that appears to be part of a larger letter. She claims it constitutes inadmissible hearsay. Because there is nothing properly authenticating the exhibit in the record, the court cannot conclude that it would be admissible at trial. Accordingly, the document (exhibit C to the defendant's memorandum) is due to be struck.

The second item the plaintiff objects to is a "Variance Report" and the attached statements signed by Laura Rampey and Charlotte Ballard. (Exhibit D to the Defendant's Memorandum). The report constitutes the complaint by Ballard concerning certain actions by the plaintiff. The plaintiff asserts that the documents are not in the form of an affidavit and are not sworn. At the hearing on the motions, counsel for the plaintiff recognized that the same exhibit was attached to Wilkinson's deposition (plaintiff's exhibit 9). Thus, this document is merely a duplicate of the plaintiff's exhibit. Upon reviewing the "Variance Report," along with the depositions offered and received at the hearing, the court is convinced that the "Variance Report" would be admissible at a trial of this case. Ballard identified the "Variance Report" as the form she signed. (Ballard depo., p. 33-36). Wilkinson identified it as the report he received and reviewed in making his decision to terminate the plaintiff. (Wilkinson depo., pp. 125-26). On the one hand, it would be admissible as non-hearsay evidence to show that the plaintiff's termination was premised, at least in part, on the receipt of a complaint from a patient. Additionally, the report may be reduced to admissible evidence under the business records exception to the hearsay rule. *See Fed. R. Evid.* 803(6). Accordingly, the motion to strike is due to be denied as to the "Variance Report".

The last item the plaintiff objects to is the statement signed by Pam Wiemans. It is a handwritten statement relaying the patient's complaints concerning the plaintiff's treatment of her. The document is signed and dated. It is not sufficiently authenticated by affidavit or deposition testimony before the court. Accordingly, the motion to strike is due to be granted as to this document (exhibit E to the defendant's memorandum) since the court cannot adequately determine its admissibility at trial under the circumstances.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see Fed. R. Civ. P.* 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the

10

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## IV. THE ADEA ANALYSIS

### A. Introduction

The ADEA prohibits an employer from discharging an employee because of her age if she is at least 40. 29 U.S.C. §§ 623(a)(1), 631(a). A plaintiff may prove discrimination by direct evidence, by statistical proof, or by circumstantial evidence. If the proof is via circumstantial evidence, the familiar three-step analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) applies. "Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case. . . ." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998), *citing McDonnell Douglas*, 411 U.S.

at 802, 93 S. Ct. at 1824. "The effect of the presumption of discrimination created by establishment of the *prima facie* case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528. If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by *McDonnell Douglas* "drops from the case" and "the factual inquiry proceeds to a new level of specificity." *Id., citing Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255 n.10, 101 S. Ct. 1089, 1094-95 n.10, 67 L. Ed. 2d 207 (1981). "Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the *prima facie* case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision." *Combs,* 106 F.3d at 1528.

> [The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence.*

*Combs,* 106 F.3d at 1528, *citing Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095 (emphasis added)

(citation omitted). Once the defendant has presented non-discriminatory reasons for its actions,

> the district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'. . . However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's *prima facie* case taken together with rejection of the employer's explanations for its actions. At that point, judgment as a matter of law is unavailable.

*Id.* at 1538.

### B. Age Discrimination

#### 1. *Prima facie* case

The plaintiff asserts age discrimination claims with respect to the three incidents described above: (1) the plaintiff's July 1997 disciplinary suspension (the "suspension"), (2) the plaintiff's September 1997 demotion for allegedly sleeping on the job (the "demotion"), and (3) the plaintiff's January 1998 termination (the "termination") related to her conduct toward patient Ballard.

The plaintiff's claims are based upon circumstantial evidence, so the *McDonnell Douglas* burden-shifting framework applies. *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 657 (11th Cir. 1998). Under that framework, the plaintiff must establish a prima facie case as to each of these claims in order to avoid summary judgment. To avoid summary judgment on the suspension claim, the plaintiff must prove her prima facie case by showing (1) that she belongs to the protected class, (2) that she was qualified for the job, and (3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline. *See Alexander v. Fulton County*, ___ F.3d ___, 2000 WL 331384, *23 (11th Cir. 2000)(desperate discipline in race context), *citing Lathem v. Dep't of Children and Youth Svcs.*, 172 F.3d 786, 792 (11th Cir. 1999); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). To avoid summary judgment on the demotion and termination claims, the plaintiff must prove based upon circumstantial evidence; (1) she is a member of the protected group; (2) her status as an employee was adversely affected; (3) she was replaced by someone "substantially younger"; and, (4) she was qualified for the job. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d

14

1428, 1432 (11th Cir.), *cert. denied*, ___ U.S. ___, 119 S. Ct. 405 (1998).  At the summary judgment stage, the focus is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 n.1 (11th Cir. 1996).  The Eleventh Circuit has "repeatedly stressed that an overly strict formulation of the elements of a *prima facie* case is to be avoided." *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1556 n.12 (11th Cir. 1995).

The parties do not contest most of the elements: Latham is a member of the protected group, she was suspended, demoted and terminated as a consequence of the respective incidents, and she was qualified to perform her job.  The defendant, however, does assert that she has not established sufficient evidence to create an inference of age discrimination.  (Doc. 7, p. 16).  Specifically, the defendant states, "the fact that the Plaintiff was replaced as a supervisor by a younger employee (Jeff Dover) and the fact that the Plaintiff was replaced after termination by a younger employee (Sherry Kinsman) do not, under the circumstances in this case, infer age discrimination sufficient to establish a *prima facie* case." (*Id.*, p. 17).  The plaintiff retorts by asserting that her past performance reviews, which were positive, raise a factual question for the jury.  (Doc. 10, p. 22).

The evidence concerning the suspension, when construed in the light most favorable to the plaintiff, establishes that she has not demonstrated a sufficient factual basis for an inference of age discrimination in Wilkinson's action.  There is no direct or statistical evidence of discriminatory intent.  At most, all that is presented is evidence that the plaintiff's prior performance was good and that younger employees were not disciplined for arriving late, exceeding the allotted lunch time, and for leaving early.

The plaintiff does not contest whether she touched Dover during the incident without his consent; she merely asserts that it was not to the degree asserted by Dover. Under the circumstances, the evidence does not support an inference that the suspension was motivated by discriminatory intent. The difference between the discipline imposed on Dover for his insubordination, a reprimand, and the discipline imposed on her, a one day suspension, is clearly distinguishable based on the fact that she was the supervisor who was involved in a disruptive, verbal altercation in which she physically touched another employee without his consent.

Wilkinson's failure to discipline other employees for less significant matters or his failure to better support the plaintiff in her decision to discipline Dover and Boatfield for their infractions are also distinguishable. Those situations are not sufficiently similar to this incident for comparison purposes. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(employees are "similarly situated" only if their conduct is "nearly identical"). The plaintiff is the supervisor. She is required to set an example, and this she failed to do under the circumstances. Accordingly, on her discrimination challenge to the suspension, the court finds that the plaintiff has not established the requisite *prima facie* case.

As to the second and third claims, the court finds that the plaintiff has established the requisite elements to demonstrate a *prima facie* case. In both instances, she was replaced by a substantially younger person. The defendant's argument that the circumstances in this case dictated that younger persons be placed in the plaintiff's positions when she was demoted and terminated does not change the conclusion of this court that a *prima facie* case has been established. That Kinsman was also a member of the protected class also does not change the fact that the plaintiff has made a *prima facie* case on the termination claim. The plaintiff met her

16

burden by showing that she was replaced by a person "substantially younger" than she was. *See O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996).

### 2. Pretext

As the defendant has presented "legitimate, nondiscriminatory reasons" for the demotion and the termination, the court must review all the evidence to see if the plaintiff has adequately challenged the defendant's explanations. In considering the motion for summary judgment, the court must "determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs,* 106 F.3d at 1538.

Concerning the demotion, the evidence is clearly disputed. The plaintiff asserted at the time of the incident that she was not sleeping. She renewed her position at her deposition. In opposition to her assertions is the testimony of Wilkinson that he observed her sleeping. Because Wilkinson purportedly was the one who observed the plaintiff sleeping and he is also the decision maker concerning this incident, the court must find that there is a dispute of a material fact, that is, whether she was sleeping. To resolve this issue, the court would be forced to make a credibility choice, which it is not authorized to do at this juncture.[10] Accordingly, summary judgment is due to be denied on this aspect of her age discrimination claim.

---

[10] In reaching this conclusion, the court is aware of the deposition testimony, particularly of Boatfield, and the other documentary evidence, that the plaintiff has been observed sleeping on other occasions. However, even with that evidence, the court is still required to make a credibility choice between Wilkinson and the plaintiff. That must be left for the jury. Additionally, to accept the testimony of Boatfield concerning this incident over the testimony of the plaintiff would require a credibility choice as well.

Concerning the termination, the court finds that were this incident examined in isolation, the plaintiff would not have "cast sufficient doubt on the defendant's proffered nondiscriminatory reason [for its action] to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs,* 106 F.3d at 1538. Unlike the incident in which the plaintiff allegedly slept on the job, Wilkinson did not observe first-hand the plaintiff's alleged mistreatment of patient Ballard. His action in terminating the plaintiff was premised on information concerning the incident given to him by a nurse who witnessed it. There is no evidence that employees involved in similarly egregious situations were not treated similarly.[11] It is not clear from the record presently before the court that the defendant followed any standard procedures in dealing with the complaint that resulted in the plaintiff's termination.[12]

The Eleventh Circuit has made it clear that the "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991). *See also Maniccia,* 171 F.3d at 1368 (courts should be careful

---

[11] The plaintiff's reference in her response to the fact that a variance report was written concerning Dover and he was not disciplined (see doc. 10, ¶ 32), does not change the court's review of this incident. A review of the pertinent transcript references fails to show the nature of the complaint against Dover, the basis of the complaint, or the date of the complaint. In fact, the cited deposition testimony shows that it occurred when Gardner, and not Wilkinson, was the supervisor. (Dover depo., p. 21). The record further demonstrates that Wilkinson had not experienced a patient complaint like the one levied against the plaintiff. (Wilkinson depo., p. 133-34).

[12] Boatfield testified at her deposition that after a variance report is submitted it goes to the department head and the employee is required to write a reply. (Boatfield depo., pp. 86-87). The record does not include the defendant's policies and procedures for handling variance reports. The lack of clarity on this aspect does not impact the court's overall consideration of the defendant's motion for summary judgment.

18

not to "second-guess employers' reasonable decisions"). In *Holifield v. Reno*, 115 F.3d 1555,

1565 (11th Cir. 1997), a Title VII race discrimination case, the court stated:

> The inquiry into pretext centers upon the employer's beliefs, and not the
> employee's own perceptions of his performance. *Billet v. CIGNA Corp.*, 940 F.2d
> 812, 818-22 (3rd Cir. 1991). *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 731
> (3rd Cir. 1995); *Gray v. U. of Arkansas at Fayetteville*, 883 F.2d 1394, 1401 (8th
> Cir. 1989); *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 428 (7th Cir.
> 1989); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) (perception of
> decisionmaker, not employee, is relevant). Thus, where the employer produces
> performance reviews and other documentary evidence of misconduct and
> insubordination that demonstrate poor performance, an employee's assertions of
> his own good performance are insufficient to defeat summary judgment, in the
> absence of other evidence. *Billet v. CIGNA Corp.*, 940 F.2d at 818-22.

*Holifield*, 115 F.3d at 1565.

The record before this court clearly shows that the patient was very dissatisfied with the

plaintiff's treatment of her. She made a formal complaint. (Ballard depo., p. 32). The plaintiff's

actions and the consequences thereof were documented by two other staff members, Registered

Nurse Laura Rampey and Supervisory Registered Nurse L. Roper. The Director of Nursing

discussed the situation with Wilkinson. He and Harrison made the decision to terminate her

based on the misconduct. The defendant has produced ample documentary evidence in support

of its reason to terminate the plaintiff after this incident.[13] However, the deposition testimony of

Wilkinson clearly demonstrates that the decision to terminate the plaintiff was based, in part, on

her involvement in "other instances." (Wilkinson depo., p. 129). Specifically, the deposition

colloquy was as follows:

> Q.   When was the decision made to terminate Mrs. Latham? Was it in that actual
>       meeting or before that meeting?

---

[13] The court previously determined that Ballard's complaint to another hospital employee, Pam Wiemann, on January
27, 1998 (doc. 7, ex. E), was not in a form appropriate for consideration at this juncture.

A.   It was before, yeah, you know, once we had all of these, you know, this statement here and understood what had happened to the patient, you know, *and based and reflecting on the other instances* we made the decision to terminate her employment.

(Wilkinson depo., p. 129)(emphasis added). Because Wilkinson clearly premised the plaintiff's termination, at least in part, on the disputed events constituting the second incident, summary judgment is precluded at this juncture. But for the interrelationship between the second and third incidents, summary judgment would be due to be granted the defendant concerning the third incident.[14]

## V. CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is due to be granted in part as to the age discrimination claim related to the suspension and due to be denied as to the discrimination claims concerning the demotion and termination. Additionally, defendant's motion for summary judgment is due to be granted on the plaintiff's claim of sex discrimination. An order consistent with the findings and conclusions reflected in this Memorandum Opinion will be entered contemporaneously herewith.

The Clerk is directed to serve a copy of this Memorandum Opinion upon counsel for the parties.

---

[14] Were it not for the connection between the incidents, the court would have found that the plaintiff has failed to show that the defendant's proffered reason concerning the last event is unworthy of credence, or that the defendant was more likely motivated by a discriminatory reason in taking this action against her. *Holifield*, 115 F.3d at 1565. The plaintiff's assessment of how the patient was treated and her factual disputes with what occurred would not have changed the result. Unlike the September 1997 incident in which the plaintiff allegedly slept on the job, the decision maker (Wilkinson) had ample documentary evidence in the form of reports and information conveyed to him rather than his personal observations, which are the focus of the dispute on the demotion claim. Nothing in the record demonstrates that he had reason to believe that they were not worthy of belief. Accordingly, absent the relationship between the demotion and the termination, summary judgment would have been due to be granted on this claim.

**DONE**, this the ___2ND___ day of May, 2000.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE